# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL ANDERSON,** | : | **CIVIL NO. 1:CV-14-00330** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARY L. SHOWALTER, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Michael Anderson, an inmate currently incarcerated at the State

Correctional Institution at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania,

initiated this civil action with a complaint filed pursuant to the provisions of 42 U.S.C.

§ 1983.  (Doc. 1.)  Named as Defendants are several Pennsylvania Department of

Corrections ("DOC") officials from Plaintiff's former place of confinement, the State

Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon").[1]  In the

complaint, Plaintiff asserts that his constitutional rights have been violated in

connection with treatment for his disability.  Plaintiff has also set forth allegations

---

[1]  Named as Defendants are former Corrections Health Care Administrator ("CHCA") Mary Showalter, former Superintendent Tab Bickell, Deputy Superintendent M.C. Garman, and Correctional Officer-1 ("CO 1") Myers (collectively, "Corrections Defendants").  Additional Defendants are as follows: Dr. Joseph Migliore; Richard S. Ellers, former Director of the Bureau of Health Care Services, Inmate Accommodation Committee; John K. Murray, former Deputy Secretary Central Region, Inmate Disability Accommodation Committee; Michael D. Klopotoski, Deputy Secretary Eastern Region, Inmate Disability Accommodation Committee; and, Robert Wolff, former acting Director of Bureau of Health Care Services.

under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §

12131, *et seq.*  Plaintiff seeks compensatory and declaratory relief.

Presently before the court is a motion to dismiss filed by Corrections

Defendants.  (Doc. 19.)  For the reasons that follow, the motion to dismiss will be

granted in part and denied in part.


## I.    **Background**

In the complaint, Plaintiff provides the following factual background with

respect to his claims.  For purposes of disposition of the instant motion to dismiss, the

factual allegations asserted in the complaint will be accepted as true and viewed in a

light most favorable to Plaintiff.

Plaintiff was shot in his right leg in 1987.  (Doc. 1 ¶ 1.)  In the late 1990's and

early 2000's, Plaintiff was incarcerated in several DOC institutions and classified as

disabled and granted reasonable accommodations.  (*Id.* ¶¶ 2, 3.)  Plaintiff describes his

disability as follows: his right leg and foot are paralyzed (lame) due to nerve and

musculoskeletal damage throughout the leg and foot; his big toe has been amputated;

and, his right heel is deformed.  (*Id.* ¶ 22.)  As a result, Plaintiff cannot run or jog,

stand or walk for long periods of time, and cannot walk on uneven surfaces, i.e. steps or stairs.  (*Id.* ¶ 23.)

In September 2011, Plaintiff reentered the DOC at SCI-Graterford, where he was physically examined and interviewed by medical staff.  (*Id.* ¶ 4.)  The SCI-Graterford doctor wrote in Plaintiff's medical file his physical disabilities and limitations, as well as the restriction that he was not to walk on uneven surfaces.  (*Id.* ¶ 5.)

In late 2011, Plaintiff and his medical files were transferred to SCI-Camp Hill.  (*Id.* ¶ 6.)  While at SCI-Camp Hill, Plaintiff was afforded reasonable accommodations, such as bottom tier / bottom bunk housing and use of the elevator rather than stairs.  (*Id.*)

On April 5, 2012, Plaintiff and his medical files were transferred to SCI-Huntingdon.  (*Id.* ¶ 7.)  He was initially interviewed by an unnamed medical staff member, and Plaintiff informed this staff member of his physical injuries and recommendations made by medical staff at SCI-Graterford.  (*Id.* ¶ 8.)  Nevertheless, Plaintiff was assigned to a bottom bunk in third tier housing.  (*Id.*)  Approximately a day or so later, however, a block sergeant observed Plaintiff having difficulty walking and Plaintiff was subsequently moved to first tier housing.  (*Id.* ¶ 9.)

3

In May 2012, Plaintiff and his cell mate were ordered to move from first tier to second tier housing by Defendant CO 1 Myers.  (*Id.* ¶ 10.)  Plaintiff informed CO 1 Myers that he was bottom tier / bottom bunk status because his leg was lame and his foot was lame and deformed.  (*Id.* ¶ 11.)  CO 1 Myers told Plaintiff that she would consult with the medical department.  (*Id.*)  After doing so, CO 1 Myers returned and stated that medical informed her that Plaintiff is listed as bottom bunk status, but not bottom tier status.  (*Id.*)  Based on this designation, CO 1 Myers ordered Plaintiff to move to the second tier.  (*Id.*)

At some point after he moved to the second tier and was required to climb stairs, Plaintiff's lame leg and lame and deformed foot swelled up so much that his old, healed surgical incisions tore open, causing four (4) new open wounds and extreme pain for Plaintiff.  (*Id.* ¶¶ 13, 14.)  Plaintiff was then seen at sick call by a physician's assistant ("PA") or doctor.  (*Id.* ¶ 15.)  Plaintiff explained his condition and requested bottom tier status.  (*Id.*)  The PA or doctor continued Plaintiff on his current pain medication, denied the request for bottom tier status, and issued Plaintiff bandages in order to clean and dress his wounds.  (*Id.*)

On or about August 17, 2012, Plaintiff submitted a disability accommodation request form to Defendant CHCA Showalter.  (*Id.* ¶ 16.)  Plaintiff complained that he

4

could not practice his Islamic religion by attending Friday Juma prayer services because the chapel was located five (5) tiers above ground level. (*Id*. ¶¶ 17, 18.) He also complained that he was substantially burdened in his right to participate in school/vocational courses because classes were held on the institution's second and third tiers. (*Id*. ¶ 20.) Finally, Plaintiff complained that he was substantially burdened in his right to access the general and law libraries because they were located on the institution's second tier. (*Id*. ¶ 21.) Also on the accommodation request form, Plaintiff requested that all of these activities be moved to the ground level of the institution for him or, in the alternative, that he be transferred to an institution that could accommodate his need for ground level access to these activities. (*Id*. ¶ 25.)

On October 2, 2012, Plaintiff received a memorandum from the Central Office Inmate Disability Accommodation Committee ("COIDAC") denying his request for reasonable accommodations. (*Id*. ¶¶ 30, 31.) COIDAC found that Plaintiff does have a disability, but the disability was already being reasonably accommodated by SCI-Huntingdon. (*Id*. ¶ 31.) Plaintiff avers that, in denying his request, COIDAC relied on inaccurate information provided to them by CHCA Showalter. (*Id*.)

On October 26, 2012, Plaintiff filed Inmate Grievance No. 430692, complaining about COIDAC's accommodation request denial. (*Id*. ¶ 33.) Defendant M.C. Garman reviewed and denied the grievance, finding the following:

> Review of your medical record indicates that you do have a disability but you are also being accommodated. You are afforded medical care, which you frequently refuse or no show for dressing changes. You are and have been housed on second tier since May 2012. You recently attended the Muslim feast which was in gym down [sic]. Programs, school and library services are on the second floor of the facility.

(Doc. 23 at 7, Ex. D, Addendum in Support of Brief in Opposition to Motion to Dismiss; *see also* Doc. 1 ¶ 34.) Plaintiff avers that Defendant Garman misstated Plaintiff's situation, as Plaintiff was required to change his own bandages until November 2012, at which time the medical department started changing them instead. (Doc. 1 ¶ 34.)

On October 31, 2012, Plaintiff appealed Grievance No. 430692 to Superintendent Bickell. (*Id*. ¶ 36.) On November 21, 2012, Defendant Bickell, who also has the title of Facility Manager, upheld the response to the grievance. (*Id*.)

On November 29, 2012, Plaintiff appealed Grievance No. 430692 to the BOP's Central Office for final review. (*Id*. ¶ 38.) On February 5, 2013, the Central Office upheld Defendant Bickell's response, stating also that, upon review, the Bureau of

6

Health Care Services concurred with the response. (*Id.*; *see also* Doc. 23 at 12, Ex. H, Final Appeal Decision, Secretary's Office of Inmate Grievances & Appeals.)

As stated above, in November 2012, SCI-Huntingdon's medical staff began changing Plaintiff's bandages, as his wounds were still present. (*Id.* ¶ 40.) Thereafter, in early December 2012, Plaintiff was escorted to Altoona Regional Health System's wound care and ostomy clinic. (*Id.* ¶ 41.) He was seen by Dr. George M. Zlupko, wound care specialist. (*Id.* ¶ 42.) After taking Plaintiff's medical history, Dr. Zlupko explained to Plaintiff that he has a medical condition called "lymphedema and venous insufficiency." (*Id.*) Dr. Zlupko gave Plaintiff a treatment plan that included how to clean and dress his wounds. (*Id.* ¶ 43.) In addition, he gave Plaintiff a "verbal order" that Plaintiff should not climb. (*Id.*)

On December 11, 2012, Plaintiff and his cell mate were ordered to move from tier two to tier one housing by a block sergeant. (*Id.* ¶ 46.) When Plaintiff's cell mate asked the sergeant why he had to move, Plaintiff heard the sergeant say that he was "tired of seeing Plaintiff fall up and down the steps," and that they both had to move. (*Id.* ¶¶ 46, 47.) However, the next day, December 12, 2012, Plaintiff was moved to an outside modular housing unit that required use of stairs. (*Id.* ¶ 48.)

On January 7, 2013, Plaintiff returned to Altoona Regional's wound care unit and was seen by Dr. Zlupko.  (*Id.* ¶ 50.)  Dr. Zlupko examined Plaintiff then ordered another treatment plan that included a directive that Plaintiff was not to ambulate on steps.  (*Id.* ¶ 51; Doc. 23 at 13, Ex. I, Wound Care Instructions.)  Plaintiff avers that Dr. Zlupko told Plaintiff that his wounds were the result of his climbing steps or stairs. (Doc. 1 ¶ 52.)

On January 15, 2013, CHCA Showalter issued a memorandum placing Plaintiff on lower tier / minimum stairs status until July 15, 2013.  (*Id.* ¶ 53.)  Plaintiff avers that this status order was given by Dr. Joseph Migliore, whom he had never met and whom had never examined Plaintiff.  (*Id.* ¶ 54.)

On February 4, February 25, March 25, and April 15, 2013, Plaintiff returned to Altoona Regional for appointments with Dr. Zlupko.  (*Id.* ¶¶ 56-58.)  At each appointment, Dr. Zlupko reordered the same treatment plan, which included the order that Plaintiff not climb steps.  (*Id.*)  Plaintiff asserts that someone at SCI-Huntingdon sent a request to Dr. Zlupko to discontinue the climbing order, but Dr. Zlupko would not overturn his order.  (*Id.* ¶ 58.)  Thereafter, on April 19, 2013, another memorandum was issued with an order from Dr. Migliore assigning Plaintiff to bottom bunk / bottom tier status until October 19, 2013.  (*Id.* ¶ 59.)

On June 18, 2013, Plaintiff was transferred to SCI-Mahanoy.  (*Id.* ¶ 60.)  At the time he still had his wounds.  (*Id.*)  Plaintiff asserts that, on July 29, 2013, he was advised that the transfer occurred due to Plaintiff's need for a handicapped accessible facility, and so that Plaintiff could participate in programs, services, and activities, as well as gain access to the law library.  (*Id.* ¶ 61.)

## II.   **Standard of Review**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id.*  A plaintiff must provide more than

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord*, *e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose

11

authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v.*

12

*Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### III.  <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach.  *Martinez v. California*, 444 U.S. 277, 285 (1980).[2]  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak

_____

[2]  The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  *Martinez*, 444 U.S. at 285.

of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id.*

In their motion to dismiss, Corrections Defendants contend that the complaint should be dismissed on the following grounds: (1) Plaintiff's Section 1983 claims against Corrections Defendants in their official capacity should be dismissed; (2) Plaintiff's claim for declaratory relief should be dismissed because he is no longer housed at SCI-Huntingdon; (3) Plaintiff's Section 1983 claims against Corrections Defendants Bickell and Garman should be dismissed for failure to allege personal involvement; (4) Plaintiff's deliberate indifference claims against non-medical Corrections Defendants should be dismissed; and (5) Plaintiff has failed to state a claim under Title II of the ADA against all Corrections Defendants. The court will address these arguments in turn.

## A.   <u>Official Capacity</u>

Corrections Defendants contend that the Eleventh Amendment bars Plaintiff's Section 1983 claims for money damages against them in their official capacities. Upon review, the court agrees.

14

The Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Garden State Elec. Inspection Servs. v. Levin*, 144 F. App'x 247, 151 (3d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In *Will*, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted. *Will*, 491 U.S. at 64. However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual, or personal capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). Based on this well-settled law, Plaintiff's Section 1983 claims for money damages against all Corrections Defendants in their official capacities will be dismissed. To the extent

15

that Plaintiff has brought Section 1983 claims against these Defendants in their

individual capacities, however, those claims remain viable. *See Hafer*, 502 U.S. at 31

("We hold that state officials, sued in their individual capacities, are 'persons' within

the meaning of § 1983.").

## B.   <u>Request for Declaratory Relief</u>

Corrections Defendants argue that Plaintiff's request for declaratory relief as it

pertains to the actions of SCI-Huntingdon officials should be dismissed as moot

because he is no longer incarcerated at SCI-Huntingdon.  Upon review, the court

agrees.

It is well recognized that the adjudicatory power of a federal court depends

upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*,

415 U.S. 452, 459 (1974).  "The rule in federal cases is that an actual controversy

must be extant at all stages of review, not merely at the time the complaint is filed."

*Id*. at 459 n.10 (citations omitted).  "Past exposure to illegal conduct is insufficient to

sustain a present case or controversy regarding injunctive relief if unaccompanied by

continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462

(S.D.N.Y. 1985) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).  A

prisoner's transfer or release from prison moots his claims for injunctive or

declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional. *Sutton v. Rasheet*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993).

In the instant case, Plaintiff was transferred out of SCI-Huntingdon to SCI-Mahanoy, and Plaintiff is not alleging that SCI-Mahanoy is failing to address his needs. (*See* Doc. 1.) Moreover, there is nothing in the record to suggest that there is a reasonable probability of Plaintiff's return to SCI-Huntingdon in the foreseeable future. Consequently, Plaintiff's claim for declaratory relief is moot and will be dismissed. *See Fortes v. Harding*, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief."). However, the court recognizes that a prisoner's transfer or release does not moot his claims for damages. *See Muslim v. Frame*, 854 F. Supp. 1215, 1222 (E.D. Pa. 1994) (stating "an alleviation of an alleged unconstitutional condition does not moot a prisoner's claim for actual and punitive damages").

## C. __Personal Involvement__

Corrections Defendants argue that the Section 1983 claims against Defendants Bickell and Garman should be dismissed for failure to allege personal involvement

17

because their actions were limited to responding to Plaintiff's grievance and grievance appeals.  Upon review, the court agrees.

It is well established that personal liability under Section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 368 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well settled in the Third Circuit that the defendant's personal involvement in alleged constitutional deprivations is a requirement in a Section 1983 case and that a complaint must allege such personal involvement.  *Hampton*, 546 F.2d at 1082.  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based.  *Id.*  As the court stated in *Rode*, 845 F.2d at 1207:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted).  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *Id*. at 1208.

18

In the instant case, although Plaintiff alleges some facts that indicate that

Corrections Defendants Bickell and Garman were aware of his concerns with respect

to his medical care based on his filing of grievances, Plaintiff cannot assert liability

against them due to their involvement in reviewing and/or affirming grievance

decisions.  First, the filing of a grievance is not sufficient to show the actual

knowledge necessary for personal involvement.  *Rode*, 845 F.2d at 1208.  Second,

mere concurrence in a prison administrative appeal process does not implicate a

constitutional concern.  *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)

(holding that administrative review of prison disciplinary hearings is not

constitutionally guaranteed and, therefore, plaintiff's claims with respect to the

Program Review Committee's decision did not rise to constitutional significance).

While prisoners have a constitutional right to seek redress of their grievances from the

government, that right is the right of access to the courts, which is not compromised

by the failure of the prison to address grievances.  *Wilson v. Horn*, 971 F. Supp. 943,

947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).  In addition, an inmate has no

federally protected liberty interest in having grievances resolved in his favor or to his

satisfaction.  *Tabb v. Hannah*, Civ. No. 1:10-CV-1122, 2012 WL 3113856, at *5

(M.D. Pa. July 30, 2012).  Stated otherwise, a prison official's failure to agree with an

19

inmate's allegations, or take specific action requested by a prisoner, does not without more, indicate unconstitutional conduct by those who respond to the grievance. *See Alexander v. Forr*, Civ. No. 3:04-CV-0370, 2006 WL 2796412, at *19-20 (M.D. Pa. Sept. 27, 2006). *See also Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D.D.C. 1995) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable."). For the reasons stated above, Plaintiff's Section 1983 claims will be dismissed as to Corrections Defendants Bickell and Garman to the extent that these claims were brought against these Defendants solely based on their involvement with the handling of Plaintiff's relevant grievances.

### D.   <u>Deliberate Indifference</u>

Corrections Defendants argue that, to the extent that Plaintiff has stated an Eighth Amendment claim for deliberate indifference to his serious medical needs, such a claim should be dismissed as to them because they, non-medical Defendants, relied upon the medical professionals who were treating Plaintiff and thus cannot be liable. Upon review, the court agrees.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate

20

deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A]s long as a physician exercised professional judgment his behavior will not violate a prisoner's constitutional rights."

*Brown v. Borough of Chambersburg*, 903 F.2d 103, 110 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a Section 1983 cause of action.  *See Durmer v. O'Carroll*, 991 F.2d 62, 69 (3d Cir. 1993).

Further, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).  Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician.  *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996).  The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires.  *Farmer*, 685 F. Supp. at 1339.

Finally, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as a non-physician, he or

22

she defers to the medical judgment of the inmate's treating physicians.  *Durmer*, 991 F.2d at 69.  If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed.  *Spruill v. Gillis*, 372 F.3d at 218, 236 (3d Cir. 2004).

In the instant case, the allegations in Plaintiff's complaint clearly demonstrate that Plaintiff has received medical attention and treatment for his leg and foot condition, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim.  Plaintiff does not claim that he was denied treatment, he simply disagrees with the treatment prescribed to him by medical personnel.  Plaintiff's disagreement, however, does not serve as a predicate to liability under Section 1983.  *See Jetter v. Beard*, 130 F. App'x 523, 526 (3d Cir. 2005) (noting that while the plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action); *Lanzaro*, 834 F.2d at 346 (stating mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim).  This is particularly so in light of the fact that Plaintiff's allegations do not assert that any Corrections Defendant intentionally withheld treatment from Plaintiff in order to inflict pain or harm upon Plaintiff.

*Farmer*, 685 F. Supp. at 1339; *Rouse*, 182 F.3d at 192.  Thus, Plaintiff's complaint amounts to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the institution.

While Plaintiff is not in agreement with the medical decisions made, he was accorded continual medical care.  Staff treated and evaluated Plaintiff on sick call visits and these non-medical Corrections Defendants followed the written directives provided by outside medical providers.  With respect to the individual Defendants at issue here, the court notes the following.  Plaintiff has only alleged facts related to Defendants Superintendent Bickell and Deputy Superintendent Garman's involvement in responding to Plaintiff's related grievances, and thus these Defendants were not involved in Plaintiff's medical treatment.  *See supra*, Section III.C, at 17-20.  *See also Smith v. Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007) ("an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance") (citing *Durmer*, 991 F.2d at 69).  Further, according to Plaintiff's allegations, Defendant CO 1 Myers, a non-medical Defendant, relied on the advice of medical professionals with regard to making a decision as to Plaintiff's move to the second tier; therefore, she cannot be held liable for any such deliberate indifference.  (Doc. 1 ¶ 11.)  *See Smith*, 251 F. App'x at 89 ("[p]rison officials who

24

are not physicians are entitled to defer to the medical judgment of staff physicians"). Finally, according to Plaintiff, Defendant Showalter, an administrator, also relied upon the professional judgment of medical providers such as Drs. Migliore and Zlupko in drafting and issuing the memoranda regarding Plaintiff's medical treatment, and therefore cannot be held liable here. (*See* Doc. 1 ¶¶ 53-54, 59.) *See Smith*, 251 F. App'x at 89. Accordingly, Plaintiff has failed to make any allegations in support of a conclusion that these Defendants possessed the culpable mental state necessary for Eighth Amendment liability to attach. *See Estelle*, 429 U.S. at 106; *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346. As a result, the deliberate indifference claim as to Corrections Defendants will be dismissed.

### E.   ADA Claim

Corrections Defendants argue that Plaintiff has failed to state a claim under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131, *et seq*. Upon review, the court disagrees and will allow this claim to proceed.

Under Title II of the ADA, discrimination is prohibited in connection with access to public services, requiring that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

25

discrimination by any such entity." 42 U.S.C. § 12132.  Thus, a claim under the ADA requires that: (1) the plaintiff has a disability; (2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program; (3) the plaintiff was excluded from the program solely by reason of his or her disability.  *See Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995).  In addition, the ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Title II of the ADA applies to state prison.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008).

Disability discrimination "differs from discrimination in the constitutional sense" because the ADA has its own definition.  *Melton v. DART*, 391 F.3d 669, 672 (5th Cir. 2004).  Accordingly, under the ADA, discrimination may include a defendant's failure to make reasonable accommodations to the needs of a disabled person.  *Id*.; *see also United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene,

medical care, and virtually all other prison programs constituted exclusion from participation or denial of benefits of the prison's services, programs or activities.") (internal quotations and citations omitted); *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

A plaintiff need not prove all elements of a *prima facie* ADA case in order to survive a motion to dismiss.  Rather, he must allege only material facts that, "in addition to inferences drawn from those factual allegations, provide a basis for recovery."  *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998).  Further, whether a request for an accommodation was made is a matter for summary judgment.  *See, e.g.*, *Wright v. Texas Dept. of Crim. Justice*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *5 (N.D. Tex. Dec. 16, 2013).

Turning to the complaint, Plaintiff alleges that the DOC failed to accommodate his physical disability resulting in the denial of certain services and prison programming such as chapel, school and vocational courses, and legal and general library services.  (Doc. 1 ¶¶ 17, 18, 20, 21.)  Broadly interpreting the phrase "substantially limits," the court finds that Plaintiff has sufficiently alleged that he is a

27

qualified individual with a disability for purposes of withstanding Corrections

Defendants' motion to dismiss.  Further, Plaintiff's proffered facts in support of this

claim create a plausible inference of the failure to accommodate his disability.  Taken

together, and accepting such as true, Plaintiff's allegations suffice to plead a claim that

he was discriminated against by the DOC in contravention of Title II of the ADA.

Accordingly, the motion to dismiss filed by Corrections Defendants, who are being

sued here in their official capacities,[3] will be denied and this claim may proceed.


## IV.   Conclusion

For the reasons set forth herein, Corrections Defendants' motion to dismiss will

be granted in part and denied in part as follows: (1) Plaintiff's Section 1983 claims for

money damages against all Corrections Defendants in their official capacities will be

dismissed; (2) Plaintiff's request for declaratory relief against all Corrections

Defendants will be dismissed; (3) Plaintiff's Section 1983 claims against Defendants

Bickell and Garman will be dismissed for failure to allege personal involvement; (4)

Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical

---

[3]  A claim against Corrections Defendants sued in their official capacities is viable, as the United States Supreme Court has held that Title II of the ADA "validly abrogates state sovereign immunity" for "conduct that actually violates the Fourteenth Amendment."  *United States v. Georgia*, 546 U.S. 151, 159 (2006).

needs will be dismissed as to all Corrections Defendants; and (5) Plaintiff's ADA claim may proceed.

An appropriate order will issue.

                                  s/Sylvia H. Rambo
                                  SYLVIA H. RAMBO
                                  United States District Judge

Dated:  March 20, 2015.